UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

GIANNI ADAMS,

       Plaintiff,                    Case No. 3:24-cv-205

v.

WBR FUNDING, LLC; JAMES          Jury Demanded
MACDONALD; and, TAMMY
MACDONALD,

       Defendants.

# COMPLAINT

## Introduction

1. This is a housing harassment case. WBR Funding, LLC, James MacDonald, and Tammy MacDonald own and operate a residential rental property business. While Gianni Adams was his tenant, James MacDonald sexually harassed her. Adams now sues to recover for her injuries.

## Jurisdiction & Venue

2. This court has subject-matter jurisdiction over this case under 28 U.S.C. § 1331 because of Adams's federal Fair Housing Act claim.

3. This court has subject-matter jurisdiction over Adams's remaining claims under 28 U.S.C. § 1367 because they arise from the same facts as her federal claim.

4. Venue is proper in this judicial district because the relevant events occurred in Ascension Parish and a defendant resides there.

## Parties

5. Plaintiff Gianni Adams is a person living in Vacherie, LA.

1

6.   Defendant WBR Funding, LLC is a Louisiana limited liability company.

7.   Defendant James MacDonald is a person living in Plaquemine, Louisiana.

8.   Defendant Tammy MacDonald is a person living in Plaquemine, Louisiana.

9.   James and Tammy are married.

**Allegations**

10.   Gianni Adams has worked as a mental health care technician for over a decade.

11.   For about three years, Ms. Adams lived with her daughter in Apartment C at 120 Oak Ridge Avenue without incident.

12.   Apartment C is one in a series of approximately 32 townhomes owned and operated by WBR Funding, LLC.

13.   WBR Funding is owned and operated by James and Tammy MacDonald.

14.   The MacDonalds and WBR Funding, on information and belief, operate a residential rental business together to make a profit, sharing expenses, profits, and management responsibilities.

15.   Over the first years of her tenancy, Ms. Adams's interactions with Mr. MacDonald were minimal: He asked her on occasion why she did not have a man and told her that he only rented to females.

16.   During Ms. Adams's tenancy, nearly all the townhomes were occupied by single women.

17.   In around the fall of 2023, a string of bad luck set Ms. Adams behind on her rent.

18.   She was in a car accident, she caught COVID-19 and so couldn't work or get paid, and her daughter had graduation-related expenses.

19.   Mr. MacDonald tried to use Ms. Adams's situation as leverage.

20. On a telephone call in around October 2023, Mr. MacDonald told Ms. Adams that she should get a "sugar daddy" and that maybe he could be her "sugar daddy."

21. He then said he would text her from another phone number; in those texts, Mr. MacDonald said that Ms. Adams could earn $100 if she performed oral sex on him.

22. Ms. Adams was shocked and embarrassed. She was humiliated that he thought so lowly of her that she would give him oral sex in exchange for rent money.

23. Shortly thereafter, in early November 2023, Ms. Adams tried to make another payment towards the rent she owed.

24. Ms. Adams called Mr. MacDonald and said that she wanted to pay what she could that day, and then pay the rest of it off as she was able.

25. Mr. MacDonald asked her if she had "chickened out" of the "other deal."

26. He tried to convince Ms. Adams, telling her, "You could have it paid off in 14 times blowing me," adding that, "My dick isn't big enough to kill you; it isn't a black man's dick," and "You're not going to catch a man if you can't suck a dick."

27. Ms. Adams was traumatized.

28. Just days after the phone conversation, Ms. Adams contacted the Louisianna Attorney General's office.

29. Within the month, she was so uncomfortable and upset that she left her home of three years, abandoning a great deal of personal property.

30. Ms. Adams's daughter had to move in with her grandmother because Ms. Adams's new unit is not in acceptable living condition.

31. The new unit needs a lot of work before it will be in an acceptable living condition..

32. To cope with the anxiety caused by Mr. MacDonald's sexual harassment, Ms. Adams has sought professional help and been prescribed medication.

33. All of Mr. MacDonald's sexual advances were unwelcome to Ms. Adams

34. Mr. MacDonald's harassment caused Ms. Adams mental and emotional pain and suffering that has given rise to bodily injury. Her injuries continue to this day.

## Claims for Relief

### Count 1 – Fair Housing Act

(Against All Defendants)

35. Adams incorporates all other allegations here.

36. Defendants injured Adams by committing discriminatory housing practices in violation of the federal Fair Housing Act, including:

37. Quid pro quo sexual harassment in violation of 24 C.F.R. § 100.600(a)(1);

38. Hostile environment sexual harassment in violation of 24 C.F.R. § 100.600(a)(2);

39. Discriminatory statements in violation of 42 U.S.C. § 3604(c).

40. Adams is therefore entitled to compensatory damages, punitive damages, declaratory relief, attorneys' fees and costs.

41. Each Defendant is directly liable, vicariously liable, or liable based on state partnership law for the discriminatory housing practices.

### Count 2 – Louisiana Equal Housing Opportunity Act

(Against All Defendants)

42. Adams incorporates all other allegations here.

43. Defendants injured Adams by committing discriminatory housing practices in violation of the Louisiana Equal Housing Opportunity Act. *See Greater New Orleans Fair Hous.*

*Action Ctr. v. Kelly*, 364 F. Supp. 3d 635, 648 n.90 (E.D. La. 2019) (state law interpreted consistently with the federal Fair Housing Act).

44. Adams is therefore entitled to compensatory damages, punitive damages, declaratory relief, attorneys' fees and costs.

45. Each Defendant is directly liable, vicariously liable, or liable based on state partnership law for the discriminatory housing practices.

### Count 3 – Negligence

(Against WBR Funding and Tammy MacDonald)

46. Adams incorporates all other allegations here.

47. Each Defendant other than James MacDonald owed Adams a duty to hire, train, supervise, and discipline the James MacDonald so as to prevent him from sexually harassing tenants like Adams.

48. Each Defendant other than James MacDonald owed Adams a duty to warn her about James MacDonald's propensity to sexual harass female tenants. *See Pedroza v. Waldrop*, No. 22-cv-1445, **10-12 (M.D. Fla. Jan. 31, 2023).

49. Each Defendant other than James MacDonald breached those duties, causing MacDonald's harassment of Adams.

50. The breaches therefore injured Adams.

51. Adams is therefore entitled to compensatory and punitive damages.

**Prayer for Relief**

52. Adams prays for a judgment with the following relief:

   a. Compensatory damages,

   b. Punitive damages,

5

    c. Attorneys' fees and costs,

    d. Pre- and post- judgment interest,

    e. Declaratory relief, and

    f. All other relief that the court finds just.

## Jury Demand

53. Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial on all issues.

Respectfully submitted,

/s/ Caroline Gabriel
Caroline Gabriel, La. Bar No. 38224
William Most, La. Bar No. 36914
Most & Associates
201 St. Charles Ave, Ste 2500 #9685
New Orleans, LA 70170
t. 504.509.5023
caroline.gabriel.ma@gmail.com
williammost@gmail.com

Thomas R. Kayes*
THE CIVIL RIGHTS GROUP, LLC
2045 W Grand Ave, Ste B, PMB 62448
Chicago, IL 60612
t. 708.722.2241
tom@civilrightsgroup.com
www.civilrightsgroup.com

Attorneys for Plaintiff

*Local Rule 11(b) lead attorney and application for admission pro hac vice forthcoming